The UNITED STATES of
America, Plaintiff,

v.

**Johnnie B. DAVIS, Defendant.**

**Civ. A. No. 91–10027–01.**

United States District Court,
D. Kansas.

April 13, 1992.

D. Blair Watson, Wichita, Kan., for plaintiff.

Charles O'Hara, Wichita, Kan., Joseph D. Johnson, Topeka, Kan., for defendant.

### EVIDENTIARY MEMORANDUM AND ORDER

THEIS, District Judge.

This matter arises from a narcotics prosecution, based on 21 U.S.C. § 841(a)(1), against Defendant Davis. Presently before the court is the defendant's objection to the admission of information relating to his income, including tax returns, for the period of 1984 through 1989. The government seeks to show that the defendant failed to file tax returns for the tax years of 1984, 1985, 1986 and 1987, and that the defendant's tax returns for 1988 and 1989 reveal earnings of $16,304 and $34,386 respectively. The government desires to introduce this evidence to show the lack of any legitimate sources for the defendant's wealth, thereby creating an inference that his unexplained wealth came from drug conspiracy and trafficking, crimes for which he is charged.

██ The defendant first argues that such evidence is barred from admission by Fed.R.Evid. 404(b) because the government is attempting to introduce evidence of the defendant's past crimes or wrongs, namely income tax evasion. The court disagrees. As previously stated, the information on Davis' income is offered to show the likelihood that Davis' opulence was derived from ill-gotten gains. It is not offered to show conduct in conformance with the defendant's character trait. As such, Rule 404(b) is not implicated. *See United States v. Jabara*, 618 F.2d 1319, 1329 (9th Cir.), *cert. denied*, 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 70 (1980).

The defendant, alternatively, asserts that his income information for 1984 through 1989 is inadmissible to show unexplained wealth because that information does not relate to the period covered by his indictment. Because the defendant is charged for drug trafficking committed during 1991, argues the defendant, his tax information for the periods between 1984 and 1989 falls outside the relevant time frame, and is thus inadmissible.

██ It is well established that a defendant's unexplained wealth is highly probative in a narcotics prosecution if such wealth creates a reasonable inference of the defendant's involvement in the drug conspiracy or trafficking. *E.g. United States v. Stubbs*, 944 F.2d 828, 836 (11th Cir.1991); *United States v. Patterson*, 819 F.2d 1495, 1501 (9th Cir.1987); *United States v. Grandison*, 783 F.2d 1152, 1156 (4th Cir.1986); *United States v. Young*, 745 F.2d 733, 762–63 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985). Nonetheless, for such evidence to be probative, the defendant's wealth must be shown to be substantial. *United States v. Cepeda*, 768 F.2d 1515, 1518 (2d Cir.1985). The government may, for example, show that the defendant possessed an extraordinarily large amount of cash or material possessions, or that the defendant engaged in an inordinately lavish lifestyle. The mere presence of wealth, however, is only marginally relevant without a concomitant showing that the defendant's material possessions were not derived from legitimate sources. *See United States v. Terzado–Madruga*, 897 F.2d 1099, 1120 (11th Cir.1990) (the fact that defendant wears gold jewelry, boasts of his financial worth, and drives a luxury automobile is in itself not highly probative of his drug involvement). Thus, in order to create a permissible inference of drug operations, evidence relating to unexplained wealth should consist of two components: the defendant's substantial wealth, and the legitimate sources of his income.

Here, the government has introduced evidence that the defendant possessed substantial amounts of cash and material possessions. The government now seeks to offer evidence pertaining to the defendant's income, which includes income tax information during the period *prior* to his alleged drug conspiracy and trafficking. What this case presents, therefore, is the novel issue of whether evidence of the defendant's income must be coterminous with

the period of the defendant's alleged crimes.

■ In *Terzado–Madruga,* the Eleventh Circuit stated that, in order to show unexplained wealth, the government may introduce into evidence the defendant's tax returns *for the years covered by the indictment.* 897 F.2d at 1120 (emphasis added). Implicit in the Eleventh Circuit's holding is that the tax returns are inadmissible if they fall outside the period for which a defendant is charged. *Id.* Although some federal courts have admitted evidence of income prior to the indictment period, this court agrees with *Terzado–Madruga.* As a practical matter, it is what a defendant earns *during* the period of his alleged drug activities that is highly probative of his involvement in the drug crimes. Evidence of the defendant's income during this relevant period can imply that he lacked legitimate sources of income to support his lavish lifestyle or to account for his substantial material possessions, thereby creating the reasonable inference that his opulence was generated by the drug conspiracy and trafficking. On the other hand, what a defendant earns *before* he allegedly began his narcotics operation has little probative value in establishing that his wealth was derived from drug activities. It is possible that the defendant's legitimate income increased dramatically during the indictment period to explain his substantial assets. This court holds, therefore, that evidence of unexplained wealth must be reasonably contemporaneous with the period in which the defendant's crimes allegedly occurred.

■ In the present case, the defendant is charged with conspiracy to distribute heroin during the period between January 1987 to March 1991. Additionally, the defendant is charged with specific instances of heroin trafficking, all occurring in early 1991, in violation of 21 U.S.C. § 841(a)(1). Because the defendant's conspiracy charge extends from 1987 to 1991, evidence pertaining to his income during this specific period is relevant towards creating a reasonable inference of his involvement in the drug conspiracy. As such, the defendant's income tax returns for the tax years 1988 and 1989 are admissible. However, the defendant's failure to file a tax return in 1987 is inadmissible evidence. Although this absence of a tax return occurred within the conspiracy period, the court finds that its probativeness in this particular instance is substantially outweighed by the danger of undue prejudice: the jury may impermissibly be swayed by speculation that the defendant had committed income tax evasion. In addition, the court holds that any income information prior to 1987 is irrelevant and, thus, inadmissible.

The defendant also has presented the court with a Motion to Suppress the tape recordings involving informant Ronnie Williams on the ground that Williams' consent to being recorded was involuntary.

■ The government claims that, to establish that an informant consented to the wiretapping, "it will normally suffice for the government to show that the informer went ahead with the [telephone] call after knowing what the law enforcement officers were about." *United States v. Bonanno,* 487 F.2d 654, 658 (2d Cir.1973). The court agrees with the defendant that, despite its literal language, *Bonanno* requires the court to examine more than merely whether an informant went ahead with the conversation knowing that it was being recorded by the police. Otherwise, law enforcement officers could hold a gun to an informant's head without being guilty of coercion simply because the informant proceeded with the call knowing that his conversations were being monitored. In determining whether an informant had consented to being recorded, the court must look at whether the informant agreed to the wiretap "consciously, freely, and independently, and not as the result of a coercive overbearing of his will." *United States v. Kelly,* 708 F.2d 121, 125 (3d Cir.1983).

■ In the present case, however, the court finds no concrete evidence of coercion. The defendant offers the sworn testimony of Ronnie Williams, the government informant,[1] in which Williams admitted

---

1. This testimony was taken in the law office of defense counsel O'Hara.

that the government threatened him with lengthy jail time and threatened his life to secure his consent to the wiretaps.[2] His testimony in court, however, differed drastically with his previous sworn testimony. In court, Williams disavowed his prior testimony, and maintained that he was never coerced by the government in any way, and had freely consented to the recordings. Faced with conflicting testimony from the same witness, the court determines that Williams' in-court testimony is more creditworthy. Thus, by the informant's own admissions, his consent was given voluntarily.

 The defendant also contends that the government gave Williams tangible benefits in exchange for his co-operation. Even if the government had offered Williams certain benefits for his consent, such action does not rise to the level of coercion but merely serves to provide Williams with an incentive to co-operate. It certainly does not show that the government overbore the will of the informant.

There is also no evidence that Williams lacked the mental capacity to consent at the time such consent was given. On the contrary, Williams testified in court that he was cognizant of his actions and was not using drugs at the time he gave his consent.

Rather than confining the examination to the evidence offered during the suppression hearing, the court must consider the evidence in this case in its entirety, including the testimony of law enforcement officers involved in outfitting Williams with the recording equipment and directing Williams' actions, as well as the actions of Williams himself, both of which indicate knowing cooperation on Williams' part in producing the taped recordings. *See United States v. Smith,* 527 F.2d 692, 694 (10th Cir.1975) (court is not limited to a consideration of the evidence introduced at the suppression hearing but may consider the evidence adduced at trial).

For the reasons articulated above, the court finds that Williams freely and consciously tendered his consent to the wiretapping. The defendant's Motion to Suppress is, therefore, denied.

IT IS BY THIS COURT THEREFORE ORDERED that Defendant's objection to the admission of tax returns is hereby sustained in part and overruled in part.

IT IS BY THE COURT FURTHER ORDERED that Defendant's Motion to Suppress the tape recorded conversations is hereby denied.

---

**2.** Williams' testimony is susceptible of differing interpretations. *A reading of the transcript could leave one with the impression that* Williams feared retaliatory conduct from the defendant Davis or his friends if he (Williams) assisted the government.