1999-NMCA-068

981 P.2d 280

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Andy RAEL, Defendant–Appellant.**

**No. 19,105.**

Court of Appeals of New Mexico.

April 6, 1999.

Certiorari Denied, No. 25,717,
May 25, 1999.

Patricia A. Madrid, Attorney General, Ralph E. Trujillo, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Laurel A. Knowles, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

BUSTAMANTE, Judge.

{1} Defendant appeals his conviction of five counts of trafficking in a controlled substance and one count of racketeering. He was sentenced to nine years on each count, but because he was found to be a habitual offender with two prior felony convictions, each sentence was enhanced by four years for a total of thirteen years per count. Four of the counts were to be served consecutively, with the remaining two to be served concurrently, for a total period of incarceration of fifty-two years.

{2} Defendant raises the following issues on appeal: (1) the State failed to prove all of the elements of racketeering; (2) the admission of evidence of Defendant's assets and lifestyle was error; (3) the State endeavored to manipulate Defendant's sentence by engaging in a series of drug transactions with Defendant; and (4) there was insufficient evidence to support the five separate charges of trafficking. We reverse Defendant's conviction for racketeering but affirm on all remaining counts. We remand for resentencing.

## FACTS

{3} Following an undercover investigation in late 1996, Defendant was arrested and charged with four counts of trafficking in cocaine, one count of trafficking in heroin, and one count of racketeering. The investigation involved a confidential informant (Clint Grant) introducing an undercover officer (Agent Cortez) to Defendant, who then sold narcotics to the undercover officer on four separate occasions. The sales were of progressively larger quantities of drugs, or involved arrangements for the sale of larger quantities of drugs: On August 22 Agent Cortez purchased one-sixteenth of an ounce of cocaine; on August 27 he purchased one-eighth of an ounce of cocaine; on August 29 he traded an automobile engine for one-half ounce of cocaine and one-half gram of heroin; and on October 10 he purchased one-eighth of an ounce of cocaine and asked Defendant if he could purchase an ounce of cocaine. Defendant said he could not sell an ounce of cocaine until he received another shipment of drugs, which he expected later that same week. After the initial introduction (the second trip to the Rael compound by both Grant and Cortez), Grant no longer accompanied Agent Cortez when Agent Cortez went to purchase drugs, although Grant did help to arrange the engine-for-narcotics exchange of August 29.

{4} There was additional evidence that Defendant was selling drugs, as well, both direct and indirect. According to Agent Cortez, Defendant said he paid heroin rather than cash to laborers who worked on his home. Grant testified that after he helped install a hot tub at Defendant's home Defendant paid him with cocaine, and that on numerous other occasions he purchased drugs from Defendant. Agent Cortez testified about the size of the house Defendant was building and about the furnishings in the house. Prosecutors corroborated this testimony by showing the jury a videotape investigators took of Defendant's home in March 1997. Finally, Agent Cortez also testified that state motor vehicle registration records indicated that ten vehicles were registered to Defendant, and that each time he purchased drugs from Defendant, Defendant was in possession of a large amount of cash.

## DISCUSSION

### A. *The State Failed to Prove All Elements of Racketeering.*

{5} At the close of the State's case, Defendant moved for a directed verdict on the racketeering charge claiming that the State failed to prove the existence of an enterprise. The trial court denied the motion. "The question presented by a directed verdict motion is whether there was substantial evidence to support the charge." *State v. Dominguez*, 115 N.M. 445, 455, 853 P.2d 147, 157 (Ct.App.1993) (citation omitted).

> In reviewing for the sufficiency of the evidence, the question is whether substantial evidence exists of either a direct or circumstantial nature to support a verdict of guilty beyond a reasonable doubt with respect to each element of the crime. The evidence is viewed in the light most favorable to the verdict and all conflicts are resolved in favor of the verdict.

*State v. Armijo*, 1997–NMCA–080, ¶ 16, 123 N.M. 690, 944 P.2d 919 (citation omitted). However, whether Defendant's association with others constituted an enterprise under the Racketeering Act is a matter of statutory interpretation, which is a question of law, not subject to the substantial evidence standard of review. *See State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995). We review questions of law de novo. *See State v. Werner*, 117 N.M. 315, 317, 871 P.2d 971, 973 (1994).

{6} "The purpose of the Racketeering Act [NMSA 1978, §§ 30–42–1 to 30–42–6 (1980, as amended through 1998) ] is to eliminate the infiltration and illegal acquisition of legitimate economic enterprise by racketeering practices and the use of legal and illegal enterprises to further criminal activities." Section 30–42–2. It is unlawful for a person to invest proceeds derived from a pattern of racketeering activity in the acquisition, establishment, or operation of an enterprise. *See* § 30–42–4(A). It is also unlawful to engage in a pattern of racketeering activity in order to acquire an enterprise. *See* Section 30–42–4(B). "It is unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs by engaging in a pattern of racketeering activity." Section 30–42–4(C). And "[i]t is unlawful for any person to conspire to violate any of the provisions of Subsections A through C of this section." Section 30–42–4(D).

{7} "Racketeering" is "any act that is chargeable or indictable under the laws of New Mexico and punishable by imprisonment for more than one year," involving any of several enumerated offenses, including trafficking in controlled substances. Section 30–42–3(A). A " 'pattern of racketeering activity' means engaging in at least two incidents of racketeering with the intent of accomplishing any of the prohibited activities set forth in Subsections A through D of Section 30–42–4 NMSA 1978." Section 30–42–3(D). An " 'enterprise' means a sole proprietorship, partnership, corporation, business, labor union, association or other legal entity or a group of individuals associated in fact although not a legal entity and includes illicit as well as licit entities." Section 30–42–3(C).

{8} There are presently no Uniform Jury Instructions applicable to this State's Racketeering Act. The jury instruction given at trial was adapted from Sections 30–42–3 and –4.

{9} At trial, the State argued that Defendant was engaged in an enterprise by selling drugs in order to finance the construction of his house, by trading drugs for work on his house, and by advising Agent Cortez that he could make money by cutting the cocaine he obtained from Defendant and selling it himself. In denying Defendant's motion for directed verdict, the trial court agreed that Defendant's activities constituted an enterprise, saying:

> Clearly there is no legal entity.... [T]he question is whether this fits under any group of individuals associated in fact although not through a legal entity, and I think there is adequate evidence of a group of individuals involved. The group including [Defendant] and the others that appeared purchased controlled substances either for cash or, as was testified to, obtained controlled substances in exchange for work performed. It seems to me in some of the [racketeering] cases ... that [an] enterprise may exist where there is no association above and beyond the acts which form the pattern of racketeering activity. The purpose of the association may be as simple as earning money from repeated illegal acts. In my view that could fit this criteria at least as to [Defendant]. Or the purpose may be to obtain drugs for consumption in my view.

On appeal, the State argues that there was evidence that a defense witness was either acting as a courier or selling drugs for Defendant, which the State contends is further proof of an enterprise. We are not persuaded.

{10} We have previously indicated that the State must prove the following elements in order to establish the existence of an enterprise:

(1) a common purpose among the participants, (2) organization, and (3) continuity.

Sporadic, temporary criminal alliances do not constitute an enterprise within the meaning of the act.

We believe the factors to be considered in determining the existence of an enterprise include the identity of the individuals involved, their knowledge of the relevant activities, the amount of planning required to carry out the predicate acts, the frequency of the acts, the time span between each act, and the existence of an identifiable structure within the association or entity....

We agree that proof of an organization is essential to establishing the elements of an enterprise.

*State v. Hughes,* 108 N.M. 143, 150, 767 P.2d 382, 389 (Ct.App.1988) (citations omitted). An enterprise may exist "solely for the purpose of engaging in the two or more crimes constituting the pattern of racketeering [activity]." *State v. Wynne,* 108 N.M. 134, 137, 767 P.2d 373, 376 (Ct.App.1988). And the evidence used to prove the existence of an enterprise may overlap with evidence of a pattern of racketeering activity. *See Hughes,* 108 N.M. at 150, 767 P.2d at 389. But "[t]he existence of an enterprise at all times remains a separate element which must be proved by the [State]." Id. at 149, 767 P.2d at 388 (quoting *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)) (internal quotation marks omitted).

{11}  As this Court recognized in *State v. Johnson,* 105 N.M. 63, 69, 728 P.2d 473, 479 (Ct.App.1986), New Mexico's Racketeering Act is based on the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68 (1994). Because of the similarity between the two acts, federal decisions interpreting RICO are instructive. *See Johnson,* 105 N.M. at 69, 728 P.2d at 479; *see also Wynne,* 108 N.M. at 137, 767 P.2d at 376. Thus, in addition to the nonexhaustive list of factors that are relevant in proving the three elements of an enterprise, which we first enumerated in *Hughes,* 108 N.M. at 150, 767 P.2d at 389, we also look to analogous federal and state case law. Nonetheless, we recognize that "[t]he term 'enterprise' ... is one of those subjects that

the more it is explained—at least in the abstract—the more elusive it becomes, and there is a danger of paraphrasing the term to death." *State v. Huynh,* 519 N.W.2d 191, 196 n. 7 (Minn.1994).

{12}  We hold that there was insufficient evidence of an enterprise to convict Defendant of racketeering. We believe that the transactions allegedly involving Defendant exchanging drugs for work on his house amounted to nothing more than "[s]poradic, temporary criminal alliances," and in no way demonstrate the sort of organization we indicated was necessary in *Hughes,* 108 N.M. at 150, 767 P.2d at 389. We disagree with the trial court that an enterprise existed in the association between Defendant and buyers for personal use. *See generally* George K. Chamberlin, Annotation, *What is an "Enterprise," as Defined at 18 USCS § 1961(4), for Purposes of the Racketeer Influenced and Corrupt Organizations (RICO) Statute (18 USCS §§ 1961 et seq.)* 52 A.L.R.Fed. 818 (1981); Jason D. Reichelt, Note, *Stalking the Enterprise Criminal: State RICO & the Liberal Interpretation of the Enterprise Element,* 81 Cornell L.Rev. 224, 253–64 (1995).

{13}  First, the State argues that even though not every individual was directly involved in trafficking drugs, each knew that the association was making a profit from the trafficking and each knowingly took part and performed his job on behalf of the enterprise and in furtherance of its common purpose to profit from the drug sales. We disagree. A buyer who seeks to obtain drugs for personal use normally does not share a common purpose with a seller·who seeks to distribute drugs for profit, whether for cash or barter. *Cf. State v. Pinson,* 119 N.M. 752, 754, 895 P.2d 274, 276 (Ct.App.1995) (trafficking in controlled substance may be accomplished in a variety of ways, but purchasing is not included, and purchaser may not be prosecuted as an accessory).

{14}  Second, there was no evidence of organization between Defendant and buyers. The organization of an enterprise need not feature an ascertainable structure or a structure with a particular configuration. The hallmark of an enterprise's organiza-

tion consists rather in those kinds of interactions that become necessary ... to achieve a common purpose. The division of labor and the separation of functions undertaken by the participants serve as the distinguishing marks of the "enterprise" because when a group does so divide and assemble its labors in order to accomplish its criminal purposes, it must necessarily engage in a high degree of planning, cooperation and coordination, and thus, in effect, constitute itself as an "organization."

*State v. Ball,* 141 N.J. 142, 661 A.2d 251, 261 (1995).

{15} Third, there was no evidence of continuity between Defendant and the buyers, irrespective of how often a particular buyer may have returned to Defendant to obtain drugs for personal use. Continuity means that the enterprise is an ongoing organization whose associates act as a continuing unit. *See United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) (defining an association-in-fact enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct"). To prove continuity the State must show "an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than an ad hoc basis." *United States v. Kragness,* 830 F.2d 842, 856 (8th Cir.1987). This requires that there be some continuity of structure and personnel within the association or entity. *See id.* Defendant's drug trafficking activities, as shown here, failed to satisfy the requirements of an enterprise under the Racketeering Act. Similarly, Defendant, in advising Agent Cortez that he could make money cutting the cocaine he bought from Defendant and selling it himself, does not establish an enterprise because there was no common purpose, organization or continuity, between Defendant and Agent Cortez. *See Hughes,* 108 N.M. at 150, 767 P.2d at 391.

{16} The State's argument as to whether the defense witness was a courier for Defendant was limited almost entirely to inference. There was evidence only of a single transaction between Defendant and the witness, which is insufficient to support a finding that there was an organization and continuity between the two. *Cf. Brown v. State,* 652 So.2d 877, 879 (Fla.Dist.Ct.App. 1995) (finding no enterprise where there was evidence only of isolated associations between the defendant and each of several witnesses). Without that, all that is left is evidence that Defendant sold drugs—perhaps a lot of drugs to a lot of people. Even so, we agree with courts that have held that an enterprise must be more than "an individual who conducts his own affairs through a pattern of racketeering." *Richmond v. Nationwide Cassel L.P.,* 52 F.3d 640, 646, 647 (7th Cir.1995).

**B.** *The Trial Court Did Not Err in Admitting Evidence of Defendant's Assets and Lifestyle.*

{17} Before trial, Defendant filed a motion seeking to prevent the State from introducing evidence of or mentioning Defendant's "assets, home, home furnishings, tax status or employment" on the ground that the evidence was irrelevant and, even if relevant, the danger of unfair prejudice substantially outweighed any probative value. The trial court denied the motion. We review a trial court's admission or exclusion of evidence for abuse of discretion. *See State v. Apodaca,* 118 N.M. 762, 770, 887 P.2d 756, 764 (1994). "We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Litteral,* 110 N.M. 138, 141, 793 P.2d 268, 271 (1990).

{18} Rule 11–401 NMRA 1999, defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence, however, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Rule 11–403 NMRA 1999.

{19} We agree that in a drug trafficking prosecution evidence of unexplained wealth may be highly relevant. "Evidence of unexplained wealth is probative and therefore admissible if it 'creates a reasonable inference of the defendant's involvement in the drug ... trafficking.'" *United States v. Penny*, 60 F.3d 1257, 1263 (7th Cir.1995) (quoting *United States v. Davis*, 789 F.Supp. 1130, 1132 (D.Kan.1992) (evidentiary mem. & order)). "[F]or such evidence to be probative, the defendant's wealth must be shown to be substantial. The government may, for example, show that the defendant possessed an extraordinarily large amount of cash or material possessions, or that the defendant engaged in an inordinately lavish lifestyle." *Davis*, 789 F.Supp. at 1132 (citation omitted). We also agree, however, that "[t]he mere presence of wealth ... is only marginally relevant without a concomitant showing that the defendant's material possessions were not derived from legitimate sources." *Id.;* see also *Penny*, 60 F.3d at 1263.

{20} In this case there was evidence of the lavishness of Defendant's house. Agent Cortez testified to having visited Defendant's three-story house, which contained, among other things, an expensive hot tub, expensive carpeting, two big-screen televisions, a wood stove Defendant is said to have bragged cost $4000, a pool table valued at between $8000 and $10,000, and numerous other furnishings. Agent Cortez also testified that Defendant boasted of the house having eleven bathrooms, which, according to Agent Cortez, Defendant said was "not bad for a guy who doesn't work." The jury also saw a videotape of the house and its contents that investigators prepared in March 1997. In addition to this evidence, however, was evidence that Defendant's sources of income were limited to his weaving and selling wood. In light of all of the evidence, the jury could reasonably infer that Defendant's wealth was derived from drug trafficking and not from legitimate sources. We hold that the trial court did not abuse its discretion by admitting evidence of Defendant's wealth. See *Davis*, 789 F.Supp. at 1132 ("[I]n order to create a permissible inference of drug operations, evidence relating to unexplained wealth should consist of two components: the defen-

dant's substantial wealth, and the legitimate sources of his income.").

{21} Defendant also argues, relying on *Penny* and *United States v. Chagra*, 669 F.2d 241 (5th Cir.1982), that the admission of evidence of his wealth was too broad because there was no indication that it was acquired during the period he was alleged to have trafficked drugs. However, Defendant would have us construe too narrowly language indicating that evidence of wealth "must relate to ... the period in which the ... trafficking occurred," *Penny*, 60 F.3d at 1263, or that the wealth was acquired "at or after the time of the commission of the alleged offense," *Chagra*, 669 F.2d at 256. We agree with the *Davis* court that evidence of unexplained wealth need only be "reasonably contemporaneous with the period in which the defendant's crimes allegedly occurred." 789 F.Supp. at 1133. Moreover, there was evidence that Defendant acquired some of the possessions in question "at or after the time" he was accused of trafficking drugs. Admission of the evidence was not an abuse of discretion.

### C. The State Did Not Engage in Sentence Manipulation.

{22} Defendant contends that because Agent Cortez made five visits to Defendant's residence, purchasing drugs on four of the visits, the State engaged in sentence manipulation. The basis for Defendant's argument is that if Agent Cortez had only made two visits and thus two purchases, Defendant would only have been charged with two counts of trafficking. Instead, Defendant was charged and convicted of five counts of trafficking. Defendant contends that the sole purpose of the additional purchases was to increase Defendant's sentence. We are not persuaded.

{23} "Law enforcement officials are entitled to buttress their cases with additional evidence, and the courts will not usurp the prosecutor's role in deciding when a particular case is strong enough to seek an indictment." *United States v. Lacey*, 86 F.3d 956, 965 (10th Cir.1996) (rejecting argument that FBI had sufficient evidence of the defendant's drug activities before final purchase

but engaged in additional purchase solely to enhance defendant's potential sentence).

Obviously, any transaction in a sting after the first violation of law, however minor, will be subject to [claims of sentence manipulation]. Yet, ... it is legitimate for police to continue to deal with someone with whom they have already engaged in illicit transactions in order to establish that person's guilt beyond a reasonable doubt or to "probe the depth and extent of a criminal enterprise, to determine whether coconspirators exist, and to trace the drug deeper into the distribution hierarchy."

*United States v. Shephard,* 4 F.3d 647, 649 (8th Cir.1993) (quoting *United States v. Calva,* 979 F.2d 119, 123 (8th Cir.1992)). Therefore, "[c]ourts should go very slowly before staking out rules that will deter government agents from the proper performance of their investigative duties." *United States v. Connell,* 960 F.2d 191, 196 (1st Cir.1992).

{24} Here, each of the first three transactions included increasing quantities of cocaine, and the third meeting included a purchase of heroin as well. On Agent Cortez's fourth visit to Defendant's home he arranged to purchase an even larger amount of cocaine. It appears that the State was attempting to determine how large a quantity of cocaine Defendant was willing or able to sell and whether Defendant was willing or able to sell other drugs as well. And, in addition to the trafficking charges, the State was attempting to make a case for racketeering. As we have indicated, the State was ultimately unsuccessful on the racketeering charge because it did not have sufficient evidence of the existence of an enterprise, which suggests that, if anything, the State's investigation should have been more thorough. *See Lacey,* 86 F.3d at 965.

{25} We acknowledge that under some circumstances continuing transactions between investigators and a potential defendant may constitute unfair manipulation of a defendant's sentence. We see no such manipulation in this case, however.

**D.** *There Was Substantial Evidence to Support the Five Separate Charges of Trafficking.*

{26} Pursuant to *State v. Franklin,* 78 N.M. 127, 129, 428 P.2d 982, 984 (1967), and *State v. Boyer,* 103 N.M. 655, 658–60, 712 P.2d 1, 4–6 (Ct.App.1985), Defendant argues that there was insufficient evidence to support five separate charges of trafficking in a controlled substance. We disagree.

{27} Although Defendant denied making the sales, Agent Cortez testified that he purchased cocaine from Defendant on four separate occasions and heroin from Defendant on one occasion. Several alibi witnesses testified on Defendant's behalf, claiming that Defendant was either with them or elsewhere when the alleged sales took place. However, "[i]t was for the [jury] as fact-finder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lay." *State v. Roybal,* 115 N.M. 27, 30, 846 P.2d 333, 336 (Ct.App.1992). Here the jury apparently believed the State's witnesses. Regarding questions as to the sufficiency of evidence, "our review involves a two-step process: deference to the resolution of factual conflicts and inferences derived therefrom, and a legal determination of whether the evidence viewed in this manner could support the conviction." *State v. Orgain,* 115 N.M. 123, 126, 847 P.2d 1377, 1380 (Ct.App.1993). If we accept as true Agent Cortez's testimony that he purchased cocaine from Defendant on four occasions and heroin on one occasion, the evidence supports a conviction of five counts of trafficking in a controlled substance.

*CONCLUSION*

{28} We affirm Defendant's conviction of five counts of trafficking in a controlled substance. However, the State failed to prove all the elements of racketeering because it failed to prove the existence of an enterprise. We therefore reverse Defendant's conviction for racketeering. We remand to trial court for resentencing.

{29} **IT IS SO ORDERED.**

PICKARD, C.J., and DONNELLY, J., concur.