This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                                          **NO. 28,761**

**RAYMOND MARTINEZ,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Stephen D. Pfeffer, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Francine A. Chavez, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**CASTILLO, Chief Judge.**

Defendant was convicted of two counts of first degree criminal sexual penetration and two counts of enticement of a child. On appeal, Defendant contends that there was insufficient evidence presented that he was the man responsible for sexually assaulting the victims, C.Q. and V.P. We disagree and therefore affirm Defendant's convictions.

On appeal, Defendant challenges the sufficiency of the evidence regarding the victims' descriptions of the assailant and the scene of the crime, as well as the victims' identification of Defendant. Defendant contends that his physical appearance does not match the descriptions given by the victims and that there were marked distinctions between the victims' and officers' descriptions of the residence where the assault allegedly took place and the homeowner's and Defendant's descriptions of where Defendant was working on the day in question. Defendant argues that no reasonable view of the evidence presented to the jury supports the finding that he was the man responsible for the crimes for which he was convicted.

"The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Riley*, 2010-NMSC-005, ¶ 12, 147 N.M. 557, 226 P.3d 656 (internal quotation marks and citation omitted). "Substantial evidence is defined as that evidence which is

acceptable to a reasonable mind as adequate support for a conclusion." *State v. Flores*, 2010-NMSC-002, ¶ 2, 147 N.M. 542, 226 P.3d 641 (internal quotation marks and citation omitted). An appellate court applying the sufficiency of the evidence standard "review[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Riley*, 2010-NMSC-005, ¶ 12 (alteration in original) (internal quotation marks and citation omitted). "The reviewing court does not weigh the evidence or substitute its judgment for that of the fact finder as long as there is sufficient evidence to support the verdict." *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789, *abrogated on other grounds by Kersey v. Hatch*, 2010-NMSC-020, 148 N.M. 381, 237 P.3d 683. In fact, "[t]his Court does not consider the merit of evidence that may have supported a verdict to the contrary." *State v. Montoya*, 2005-NMCA-078, ¶ 3, 137 N.M. 713, 114 P.3d 393 (internal quotation marks and citation omitted). "Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. Nor will this Court "evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence." *State v. Graham*, 2005-NMSC-004, ¶ 13, 137 N.M. 197, 109 P.3d 285 (internal quotation marks and

citation omitted).

At trial, the victims testified to a nearly identical scenario that, when combined with Detective Wiggins' testimony, provided sufficient evidence to convict Defendant as the man who was responsible for sexually assaulting the victims. The boys testified as follows. C.Q. and V.P. were eight and seven years old, respectively, at the time of the assault. It was summertime and they were hunting for grasshoppers while walking along an arroyo close to a home on Agua Fria where V.P. was living. The boys saw a man they did not know standing outside of a residence. The man asked the boys if they would like to have some Kool-Aid, to which they responded in the affirmative. The boys stayed outside and played with a cat while the man brought them Kool-Aid.

The man said he was rebuilding his bathroom and asked the boys to come look at it. C.Q. went into the house first; V.P. remained outside and continued playing with the cat. C.Q. testified that the man took him to the bathroom, closed the door, showed him some tile, and took off C.Q.'s pants and underwear. C.Q. stated that the man put his mouth on C.Q.'s "privates" and performed oral sex on him. The man stopped and told C.Q. not to tell anyone and that he would give C.Q. fireworks if he kept their secret. C.Q. left the house and went to look for V.P.,who he did not see until V.P. later left the bathroom.

V.P. similarly testified that the man also asked him to go into the house, took

4

him into the bathroom, closed the door, and told V.P. to pull down his pants. The man put his mouth on V.P.'s "privates," and V.P. testified that it felt like the man was biting him. When it was over, V.P. pulled up his pants, ran out of the door, found C.Q., and went back to the house where V.P. was living.

Later that day, V.P. went to a scheduled doctor's appointment for a check up and, while his mother was undressing him, he told her about the sexual assault. V.P.'s mother contacted C.Q.'s aunt and guardian and told her to speak with C.Q. about what had happened. The SANE nurse's testimony reflected that V.P. and C.Q. relayed the same stories to her during their separate examinations: they encountered a stranger at the arroyo who sexually assaulted them in a bathroom. Detective Wiggins, the supervising detective in the case, testified that the boys described the man who assaulted them as dark-skinned with a pock-marked face; crooked, bad teeth; and black, greasy hair. The boys showed police officers the home near the arroyo where they said the assault occurred.

Later, detectives returned to that house and found four men sitting at a table outside drinking beer. Defendant was among the men sitting at the table. Detective Wiggins testified that Defendant appeared to be somewhat intoxicated and that he was asking a lot of questions, talking closely with the detective, and demanding to know what the officers were investigating. During the exchange, Defendant stated that he

had been at the residence all day, and that Defendant had made contact with two little boys at the residence that day. Defendant claimed that he, not the boys, had been sexually assaulted. Defendant explained to Detective Wiggins that the boys had asked him for water, that he had agreed, that he brought them inside, and that, when they were in the bathroom, the boys attempted to grab his penis. Detective Wiggins testified that, given the information he had received from the other investigators, the boys' statements, and their descriptions of the assailant, the detective thought he had probable cause to believe that Defendant was the man who assaulted the boys and placed him under arrest. Detective Wiggins also testified that he saw that there was some kind of tile work being done in the kitchen area.

Defendant argues that the evidence was not sufficient to identify him as the man who assaulted the boys because Defendant had distinctive features that were not mentioned by either C.Q. or V.P. during the investigation or at trial, including Defendant's moustache, goatee, an obviously crooked nose, a noticeable scar on his cheek, normal top teeth , discolored hands and elbows from psoriasis, and a tattoo on his right forearm. In addition, Defendant points out that, although the house was in complete disarray, there was no tile work being done and that the boys inaccurately described how they could have entered the home. Defendant attacks the credibility of Detective Wiggins and his conclusion that Defendant was sufficiently identified.

6

Defendant asserts that Detective Wiggins merely made an inference based on a statement made by an intoxicated man, which was not written, recorded, or overheard by the numerous other people present, and complains that he was convinced Defendant was the assailant and ended the investigation that night without ever confirming Defendant's identity with the boys. Finally, Defendant directs us to his own testimony. He testified that he recalled seeing the boys but neither spoke with them nor had any contact with them.

Even assuming "each component may be insufficient to support the conviction when viewed alone[, it] does not mean the evidence cannot combine to form substantial, or even overwhelming, support for the conviction when viewed as a whole." *Flores*, 2010-NMSC-002, ¶ 17 (internal quotation marks and citation omitted). Our review of the evidence is not done "with a divide-and-conquer mentality, as though we were the finders of the facts." *Montoya*, 2005-NMCA-078, ¶ 3 (citation omitted).

Even though the boys did not give a perfect description of Defendant or of the residence where the assault occurred, the officers were able to find the residence and focus on Defendant. Defendant's statement to Detective Wiggins placed him with the boys in the bathroom at the residence. The boys general and consistent descriptions of Defendant and of the residence in conjunction with Defendant's statement to

Detective Wiggins constitutes sufficient evidence that Defendant was responsible for the assault. Moreover, one of the boys provided an in-court identification. When asked if the perpetrator was in the courtroom, C.Q. pointed out Defendant. Defendant argues that the in-court identification was unreliable because C.Q. admitted that he was told where the perpetrator would be sitting. This argument challenges the credibility and weight of C.Q.'s in-court identification. As we have already stated, it is the jury's duty as "as fact-finder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lay." *State v. Rael*, 1999-NMCA-068, ¶ 27, 127 N.M. 347, 981 P.2d 280 (internal quotation marks and citation omitted).

A reasonable mind could conclude that the evidence was adequate to support the conclusion that Defendant was the assailant. *See Flores*, 2010-NMSC-002, ¶ 2. It is not our role on appeal to reweigh the evidence or resolve conflicts that the evidence presented. *See Riley*, 2010-NMSC-005, ¶ 12. Accordingly, we hold that sufficient evidence supports Defendant's convictions.

**CONCLUSION**

For these reasons, we affirm Defendant's judgment and sentence.

**IT IS SO ORDERED.**

_____

**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**ROBERT E. ROBLES, Judge**

9