2005-NMSC-018

116 P.3d 80

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Richard LOPEZ, Defendant–Respondent.**

**No. 28,016.**

Supreme Court of New Mexico.

June 27, 2005.

Patricia A. Madrid, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM, for Petitioner.

John B. Bigelow, Chief Public Defender, Trace L. Rabern, Assistant Appellate Defender, Santa Fe, NM, for Respondent.

*OPINION*

SERNA, Justice.

{1} Defendant Richard Lopez was charged with trafficking cocaine, possession of marijuana, possession of drug paraphernalia, and forfeiture of cash. Pursuant to a plea bargain, the State reduced the first charge and dropped the remaining charges. As a result, Defendant pleaded no contest to possession of cocaine,[1] reserving the right to appeal the district court's denial of his suppression motion. The district court granted a conditional discharge, requiring eighteen months of pro-

bation. The Court of Appeals reversed the trial court's denial of Defendant's motion to suppress, concluding that the police officers violated the knock and announce rule, in a memorandum opinion. This Court granted the State's petition for writ of certiorari. We reverse the Court of Appeals and affirm the district court.

### I. Facts and Background

{2} The police officers obtained a search warrant for a mobile home in Lincoln County that authorized seizure of illegal and/or stolen firearms, controlled substances, and distribution equipment. The warrant was based on the allegation that a resident of the house, Ramon Sanchez, was involved in the sale of illegal drugs and that he "has/sells stolen firearms to include fully automatic Mini–14's and sawed-off shotguns." A confidential informant provided the basis for the information in the warrant and had been present at the residence within the past few days. Defendant had a room in the house. Police officers had conducted prior surveillance. The officers expected to find between two and four people in the residence.

{3} The officers, wearing uniforms or vests that identified them as law enforcement, executed the warrant at approximately 3:00 p.m. Four officers knocked and announced their presence, identity, and purpose. Another group of officers were positioned at the other side of the residence with directions to cover the other door. The officers did not hear anything from inside the residence following their knocking. Approximately three seconds after knocking and announcing, the officers opened the unlocked door and entered the residence. While entering the home, the officers continued to announce and identify themselves, stating that they had a search warrant.

{4} The officers found Sanchez coming out of the bathroom and Defendant in his bedroom with the door closed. A loaded Ruger Mini–14 was in Defendant's bedroom closet, and the closet door was open. Defendant was arrested. The police officers found thirty-three marijuana plants, distribution equip-

---

1. We note that the Court of Appeals stated that Defendant pleaded guilty to possession of co-caine, possession of marijuana, possession of drug paraphernalia, and forfeiture.

ment, and paraphernalia. They seized the Ruger Mini–14, thirty-three boxes of ammunition, a plastic bag containing a substance that field-tested positive for cocaine, a green leafy substance in a plastic container, and a digital scale from Defendant's bedroom, as well as $513 in cash in his pocket.

{5} Defense counsel moved to suppress the evidence, arguing that the officers failed to satisfy the requirements of the knock and announce rule because they did not wait long enough after knocking. Defense counsel also asserted that there was insufficient evidence that the residents of the home were violent or were going to use the firearms. The prosecutor argued that the officers had reliable information that the resident was a drug and weapons dealer or was in possession of weapons, which created the factual' basis for the officers of a risk of danger justifying a quick entry for their safety. The district judge denied Defendant's motion to suppress, deciding "[f]or the reasons set forth by the State of New Mexico, I am going to find that the three (3) seconds was adequate time in which to knock and announce because of the exigent circumstances of the reasonable suspicion of firearms being within the house."

{6} Defendant raised two issues in the Court of Appeals: first, he argued that the police officers had violated the knock and announce rule, and second, he argued that the affidavit did not provide sufficient information to establish the confidential informant's credibility and reliability. The Court of Appeals reversed the district court's denial of Defendant's motion to suppress on the first issue and did not reach the second claim. The Court of Appeals concluded that the three-second wait did not satisfy the requirement that the police officers wait a reasonable time before entering and noted that the wait was "not a reasonable amount of time … to allow a person to react to a knock and announce and get up from a chair to answer the door."

{7} Defendant appears to argue to this Court that the basis of the warrant was not sufficient to support the presence of weapons in the residence. Defendant contends that there was only probable cause for illegal drugs. Defendant also appears to rely on the items actually found by police, rather than the items listed in the warrant. The State argues that Defendant erroneously describes the record when he claims that there was a mere assertion that firearms were in the residence, attempting to argue that there was insufficient evidence showing the informant's basis of knowledge regarding the existence of firearms at the residence. The State contends that the issue regarding the informant is not before the Court because Defendant did not file a petition for certiorari on this issue, and that, even if Defendant had done so, that issue was not raised in the Court of Appeals. Thus, the State argues that these are two separate issues, the informant's basis of knowledge regarding the presence of firearms and the veracity of the informant, and that neither is properly before this Court. As the State argues, only the knock and announce issue is before this Court. We address only the issue raised in the petition, whether the district court properly denied Defendant's motion to suppress based on a finding that partial compliance with the knock and announce rule was excused because of exigent circumstances.

## II. Discussion

{8} In *State v. Attaway*, 117 N.M. 141, 150, 870 P.2d 103, 112 (1994), this Court held that law enforcement officers are required to knock and announce their identity and purpose prior to executing a search warrant. However, "[w]e expressly endorse[d] the widely accepted, general exception to the rule of announcement based on an officer's objectively reasonable belief that full or partial compliance with the rule of announcement would increase the risk of danger to the officers effectuating the warrant." *Id.* at 151, 870 P.2d at 113.

## A. Standard of Review

 {9} "The standard of review for suppression rulings is whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party." *State v. Jason L.*, 2000–NMSC–018, ¶ 10, 129 N.M. 119, 2 P.3d 856 (quotation marks and quoted authority omitted). "[A] trial court is to be given wide latitude in

determining that an historical fact has been proven." *Attaway*, 117 N.M. at 144, 870 P.2d at 106. The appellate court reviews "these purely factual assessments" for substantial evidence, *id.*, and "[t]he appellate court must defer to the district court with respect to findings of historical fact so long as they are supported by substantial evidence." *Jason L.*, 2000–NMSC–018, ¶ 10, 129 N.M. 119, 2 P.3d 856. "[A]ll reasonable inferences in support of the [district] court's decision will be indulged in, and all inferences or evidence to the contrary will be disregarded." *Id.* (quotation marks and quoted authority omitted) (alteration in original); *accord State v. Vargas*, 1996–NMCA–016, ¶ 8, 121 N.M. 316, 910 P.2d 950. Thus, we must draw all reasonable inferences in support of the district court's denial of Defendant's motion to suppress and defer to the district court's determination of the facts.

{10} The United States Supreme Court has expressed that neither the language of the Fourth Amendment nor the Court's precedent require specification in the search warrant of the manner in which the warrants must be executed. "On the contrary, it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by a warrant—subject of course to the general Fourth Amendment protection 'against unreasonable searches and seizures.' " *Dalia v. United States*, 441 U.S. 238, 257, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979) (footnote omitted). The Supreme Court "held that the common law knock-and-announce principle is one focus of the reasonableness enquiry," and that "although the standard generally requires the police to announce their intent to search before entering closed premises, the obligation gives way when officers have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or ... would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *United States v. Banks*, 540 U.S. 31, 36, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003) (quotation marks and quoted authority omitted) (omission in original). Thus, we measure an officer's reason-

able belief under a reasonable suspicion standard. "This standard—as opposed to a probable cause requirement—strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries." *Richards v. Wisconsin*, 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997) (rejecting a blanket rule that any warrant pertaining to a drug investigation would automatically constitute exigent circumstances, and holding that it was reasonable for officers to force open a hotel room door without announcement because the officers had a reasonable suspicion that the occupant might destroy evidence once he knew of their presence). The reasonable suspicion "showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged." *Id.* 394–95, 117 S.Ct. 1416. We require specific, articulable facts, together with reasonable inferences therefrom, as a basis for concluding that "the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement." *Id.* at 394, 117 S.Ct. 1416. "A de novo standard of review is applied to the ultimate determination of whether the facts constitute exigent circumstances sufficient to make a no knock entry reasonable under the Fourth Amendment." *United States v. Cooper*, 168 F.3d 336, 339 (8th Cir.1999).

{11} Whether exigent circumstances existed to excuse compliance with the knock-and-announce rule is a mixed question of law and fact. *Attaway*, 117 N.M. at 144–45, 870 P.2d at 106–07. As Defendant argues, and consistent with federal law as discussed above, we review the district court's determination of exigency de novo. *Id.* at 145–46, 870 P.2d at 107–08 ("[W]e conclude that the mixed question involved in determining exigency lies closest in proximity to a conclusion of law, and hold that such determinations are to be reviewed de novo."). In determining whether exigent circumstances existed, the appellate court must "weigh underlying policy considerations, and ... balance competing legal interests," specifically between the safety of law enforcement offi-

cers and Fourth Amendment privacy interests. *Id.* at 145, 870 P.2d at 107 (quotation marks and quoted authority omitted). This Court reviews de novo the balance between the degree of intrusion and the risk to officer safety. *See Jason L.,* 2000–NMSC–018, ¶ 14, 129 N.M. 119, 2 P.3d 856.

{12} "In reviewing the risk of peril exception we follow ... an objective test of whether, under the facts established, a reasonable, well-trained, and prudent police officer would believe that full or partial compliance with the rule of announcement would create or enhance the danger to the entering officers." *Attaway,* 117 N.M. at 153, 870 P.2d at 115; *accord State v. Ortega,* 117 N.M. 160, 162, 870 P.2d 122, 124 (1994) (stating that an appellate court reviews "the sufficiency of exigent circumstances by determining whether a reasonable, well-trained, and prudent police officer could conclude that swift action was necessary") (quotation marks and quoted authority omitted). The appellate court must "consider all of the circumstances as found or impliedly found by the trial court to be present at the time of entry." *Attaway,* 117 N.M. at 153, 870 P.2d at 115.

## B. The Exigency Exception to the Knock and Announce Rule

{13} In *Attaway,* this Court stated that "[g]eneral knowledge regarding the propensity of armed drug dealers is not sufficient to excuse compliance with announcement requirements," and that the police officers must "have knowledge of the specific individual's propensity to use violence before an unannounced entry would be considered reasonable." 117 N.M. at 152, 870 P.2d at 114. "The requirement of specificity [regarding law enforcement's knowledge of the specific individual's propensity to use violence] is to be liberally construed because direct evidence of a suspect's propensity rarely will be available." *Id.* The Court in *Attaway* set out three examples of specific evidence that might support the inference that a particular suspect presents a danger to police officers:

knowledge that a suspect owns weapons and knowledge that the suspect has committed a crime of violence ... [;] knowl-

edge that the suspect possesses a large cache of illegal or unusually dangerous weapons[;] or [knowledge] that the suspect possesses weapons coupled with other circumstances tending to show violent or unpredictable behavior.

*Id.* at 152–53, 870 P.2d at 114–15. We concluded that such knowledge of any of these factors "may be sufficient to reasonably conclude that the suspect is likely to use those weapons." *Id.* at 153, 870 P.2d at 115.

{14} The State argues that the facts of this case meet the *Attaway* example of an inference that a suspect who possesses a large cache of illegal or unusually dangerous weapons presents a danger to police officers. The State argues that it can be reasonably inferred that a weapons dealer possesses "a large cache" of weapons, and that the weapons involved, fully automatic Mini–14's and sawed-off shotguns, were "illegal or unusually dangerous." Defendant argues that in *Attaway,* 117 N.M. at 153, 870 P.2d at 115, police officers knew that the defendant had a conviction for a weapons offense, had an outstanding warrant from another state, "possessed a large arsenal of weapons including an automatic weapon, two sawed-off shotguns, a couple of rifles, and numerous handguns," and "had threatened police officers." In contrast, Defendant contends that the officers in his case lacked knowledge regarding the occupants' propensities or such specific information about their behavior or conduct. While we agree that the facts in the present matter are not as overwhelming as the facts of *Attaway,* we also agree with the State that we did not hold the facts in *Attaway* to be a minimum necessary to support exigency.

{15} In the present matter, the Court of Appeals, relying on *Attaway,* concluded that "a suspicion of trafficking drugs and of possessing weapons, as presented in the affidavit in this case, does not excuse the failure to satisfy the knock and announce rule." The Court of Appeals decided that additional information, "for example, that the individual has made prior threats toward officers and is armed [or] that the individual is known to be armed and has a prior criminal record or record of arrests," is required for a finding of exigency. The Court of Appeals recognized

the "large cache" example in *Attaway* but concluded that a specific finding by the trial court to that effect was necessary.

{16} Although the State reasonably argues that the facts of the present case fall within *Attaway's* example of a large cache of illegal or unusually dangerous weapons, we are concerned that the illustrations in *Attaway* have been incorrectly viewed as an inflexible test requiring particular findings by the trial court rather than as mere examples of specific evidence that support the inference of a violent propensity. The examples are not an exhaustive list of facts that must be explicitly or implicitly found by the trial court; they are simply a few instances of specific evidence supporting the inference. We developed these examples, weapons plus a violent criminal history, possessing a large cache of weapons, and weapons in addition to other circumstances that demonstrate a violent behavior, for illustrative purposes, not, as they have been incorrectly viewed, as self-contained categories to be strictly applied. We believe that these examples, when viewed under the totality of the circumstances of the facts of a case, can continue to be, as we intended in *Attaway*, illustrations of specific evidence that may support an inference of a violent propensity. Thus, if as viewed under the totality of the circumstances of a case, officers have knowledge that a suspect has a violent criminal history and possesses firearms, a court may conclude that an exigency is present. In fact, the knowledge of multiple Mini–14's and sawed-off shotguns in the present case could reasonably be viewed as a large cache of illegal or unusually dangerous weapons that support an inference that a suspect has violent propensities under the totality of the circumstances. Nonetheless, we wish to clarify that the facts of this case or any exigency case should not be pigeon-holed into a set category; instead, each case must be viewed under the totality of the circumstances present.

{17} However, aside from these general examples in *Attaway*, we incorrectly created a bright line rule that the suspicion of drug trafficking and the presence of firearms is always insufficient to constitute an exigency. The Court of Appeals did not engage in the

required review of the totality of the circumstances present in this case; rather, the Court instead applied what we view as this bright line test or blanket rule from *Attaway* that the suspicion of drug trafficking and presence of firearms alone is insufficient. The arguments of the parties, as well as the strict application of *Attaway* by the Court of Appeals, lead us to the conclusion that it is necessary to revisit the bright line rule of *Attaway* that concluded that the presence of firearms and illegal drugs is never sufficient to justify an exigency. We agree with the United States Supreme Court that blanket exceptions as well as bright line rules are to be avoided in the analysis of these types of cases.

> Although the notion of reasonable execution must . . . be fleshed out, we have done that case by case, largely avoiding categories and protocols for searches. Instead, we have treated reasonableness as a function of the facts of cases so various that no template is likely to produce sounder results than examining the totality of circumstances in a given case; it is too hard to invent categories without giving short shrift to details that turn out to be important in a given instance, and without inflating marginal ones.

*Banks*, 540 U.S. at 35–36, 124 S.Ct. 521.

{18} Therefore, we wish to clarify *Attaway*. We stated that "[g]eneral knowledge regarding the propensity of armed drug dealers is not sufficient to excuse compliance with announcement requirements," *Attaway*, 117 N.M. at 152, 870 P.2d at 114, which, in the context of the discussion of that case, has been rightly interpreted to mean that evidence of drugs and weapons is insufficient to support an inference of violent propensity justifying exigency. We discussed and rejected a case from another jurisdiction that concluded that, because "guns are tools of the illegal drug trade and . . . a person in possession of both firearms and large quantities of illegal drugs poses a significant threat to the safety of law enforcement officers," the "presence of firearms and drugs together gives rise to exigent circumstances because of the violence associated with drug trafficking today." *Id.* (quotation marks and quoted

authority omitted). As Defendant recognizes, *Attaway* did not involve the mere presence of weapons and the sale of illegal drugs; rather, the officers in that case had reasonable suspicion that Attaway was a "dealer of substantial quantity," that he had an outstanding California warrant for his arrest, that he had previously been convicted of weapons and drug charges, that he possessed "a large arsenal of weapons," and that he had actually threatened police officers. *Id.* at 153, 870 P.2d at 115. With this wealth of evidence, it was not difficult to reach our conclusion that the officers' manner of entry and execution of the warrant were reasonable. More importantly, the discussion of the presence of weapons and the allegation of drug dealing alone as insufficient to support the finding of a violent propensity was dicta and contained in a plurality opinion.

{19} Given the case before us, where the officers had a reasonable suspicion that the occupant was involved in the sale of illegal drugs and in possession of multiple weapons such as sawed-off shotguns and Mini–14's, we disavow this dicta and conclude that, as discussed further below, the presence of weapons and the sale of illegal drugs may, when viewed under the totality of the circumstances, equal an exigency justifying an exception to the knock and announce rule. We agree with the special concurrence in *Attaway*, which cautioned the Court to consider "the factual realities of today's drug trade." *Id.* at 155, 870 P.2d at 117 (Baca, J., specially concurring). The special concurrence noted that drug trafficking places law enforcement officers in extreme danger, and concluded that "it may be requiring too much to insist that officers executing a warrant for large quantities of illegal drugs and large quantities of firearms from suspected drug dealers should specifically know of the suspects' violent propensity before executing a . . . warrant" under the exigency exception to the announcement rule. *Id. accord United States v. Kennedy*, 32 F.3d 876, 882 (4th Cir.1994) ("[T]he law has uniformly recognized that substantial dealers in narcotics possess firearms and that entrance into a situs of drug trafficking activity carries all too real dangers to law enforcement officers.") (quotation marks and quoted authori-

ty omitted). Other jurisdictions, under the totality of the circumstances, have affirmed the exigency exception of peril to officers when faced with suspects involved in the sale of drugs and the possession of firearms. *E.g., United States v. Stowe*, 100 F.3d 494, 499 (7th Cir.1996) ("While the presence of a gun alone is not necessarily enough, drug dealing is a crime infused with violence. The police rightfully feared a possible gun fight. Guns *and* drugs together distinguish the millions of homes where guns are present from those housing potentially dangerous drug dealers—an important narrowing factor.") (citation omitted); *State v. Wasson*, 615 N.W.2d 316, 321 (Minn.2000) (en banc) (affirming a no-knock entry where the officers had the articulable facts of the sale of drugs and presence of weapons that supported a reasonable suspicion that knocking and announcing entry would be dangerous); *White v. State*, 155 S.W.3d 927, 928 (Tex.App.2005) (recognizing that "precedent has long acknowledged the link between drugs, guns and violent behavior" and affirming an execution of a warrant where, following no or partial compliance with the knock and announce rule, the officers believed that the suspect possessed methamphetamine and firearms).

{20} "[I]n each case, it is the duty of a court confronted with the question to determine whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement." *Richards*, 520 U.S. at 394, 117 S.Ct. 1416. Rather than pigeonholing the facts of the present matter into our dicta in *Attaway*, we instead must consider the totality of the circumstances present at the time of entry, as found or impliedly found by the trial court, in relation to whether a law enforcement officer would have a reasonable suspicion that compliance with the knock and announce rule would create or enhance the danger to the entering officers.

## C. Application of the Exigency Exception

{21} The State argues that, under the totality of the circumstances, the police officers had a reasonable suspicion that wait-

ing to enter the residence would have increased the threat to their safety because the search involved exigent circumstances due to the availability of multiple sawed-off shotguns and Mini-14's inside the residence. The State asserts that the Court of Appeals' analysis was inconsistent with the proper standard of review because it failed to indulge in all reasonable inferences in favor of the district court's ruling. *See Jason L.,* 2000–NMSC–018, ¶ 10, 129 N.M. 119, 2 P.3d 856. The State contends that the Court of Appeals failed to apply the proper standard when it concluded that "the trial court did not find, nor did the State argue below, that the residence at issue contained a 'large cache' of illegal or dangerous weapons." The State argues that the Court of Appeals erroneously required the State, in whose favor the district court ruled, to have argued that there was a "large cache" of weapons and effectively required the district court to make this specific finding. We agree. We have previously held that explicit findings are not required and that the reviewing court indulges in all reasonable presumptions in favor of the trial court's ruling. *Jason L.,* 2000–NMSC–018, ¶ 11, 129 N.M. 119, 2 P.3d 856.

{22} Our example in *Attaway* concerning a suspect who possesses a large cache of illegal or unusually dangerous weapons did not require a specific finding to this effect. Rather, we were setting out examples of specific evidence that can support an officer's inference that a suspect has a propensity for violence to justify an exception to the knock and announce rule because "direct evidence of a suspect's propensity rarely will be available." *Attaway,* 117 N.M. at 152, 870 P.2d at 114. We explicitly concluded that, when reviewing the reasonableness of partial compliance with the knock and announce rule, we "consider all of the circumstances as found or *impliedly found* by the trial court to be present at the time of entry." *Id.* at 153, 870 P.2d at 115 (emphasis added). We further noted with approval a case from another jurisdiction that upheld a search following a brief announcement period where the suspect had " 'an array of firearms.' " *Id.* at 154, 870 P.2d at 116 (quoted authority omitted). "The fact that another district court could have drawn different inferences on the same facts

does not mean this district court's findings were not supported by substantial evidence." *Jason L.,* 2000–NMSC–018, ¶ 10, 129 N.M. 119, 2 P.3d 856; *accord Attaway,* 117 N.M. at 153, 870 P.2d at 115. Here, as in many other cases, the district court did not make specific findings of fact; thus, "we must draw from the record to derive findings based on reasonable facts and inferences and determine whether those facts and inferences support the conclusion reached by the court." *Attaway,* 117 N.M. at 153, 870 P.2d at 115, *accord Jason L.,* 2000–NMSC–018, ¶ 11, 129 N.M. 119, 2 P.3d 856 (noting that a lack of findings of fact from the district court is "a regular occurrence" and that the appellate court "indulge[s] in all reasonable presumptions in support of the district court's ruling") (quotation marks and quoted authority omitted). As determined by our standard of review, we agree with the State that, since the district court ruled that there were exigent circumstances, this Court must view the facts in the light most favorable to that ruling and indulge in all reasonable inferences in favor of the district court's ruling. Thus, we accept, based on reasonable inferences, the district court's determination that the affidavit's statement that the occupant "has/sells stolen firearms to include fully automatic Mini-14's and sawed off shotguns" meant that the occupant had multiple weapons of this type in his possession. We take this fact into consideration in determining whether exigent circumstances existed under the totality of the circumstances.

{23} The State argues that the three-second wait should be measured by how long it would take drug dealers in possession of automatic weapons to arm themselves rather than, as the Court of Appeals concluded, the time it would take a person to get up and answer the door. We agree that the appropriate length of time should not be based on the time it takes for one to respond and open the door in the context of exigent circumstances. "[T]he police claim exigent need to enter, and the crucial fact in examining their actions is not time to reach the door but the particular exigency claimed." *Banks,* 540 U.S. at 40, 124 S.Ct. 521. In *Banks,* the Supreme Court rejected the defendant's ar-

guments that a fifteen to twenty second time was too short a period to allow him to respond to the knock and answer the door, and concluded that "when circumstances are exigent because a pusher may be near the point of putting his [or her] drugs beyond reach, it is imminent disposal, not travel time to the entrance, that governs when the police may reasonably enter." *Id.* Thus, in the present matter, we view the officers' actions in terms of the exigency at issue, the time it would take for occupants to retrieve "fully automatic Mini–14's and sawed-off shotguns" in order to arm themselves. We note that, if there are exigent circumstances, the officers can altogether dispense with the knock and announce rule or partially comply by knocking and announcing their identity and purpose before forcible entry, leaving the decision to the officers' judgment based on their experience. *Attaway,* 117 N.M. at 151, 870 P.2d at 113 (stating that, in a case involving the exigency of peril to officers, "partial compliance or non-compliance with the rule of announcement may be excused"); *Ortega,* 117 N.M. at 163, 870 P.2d at 125 (holding "that if an officer has good reason to believe that evidence will be destroyed, that officer is justified in making an unannounced entry into a person's residence").

{24} Defendant argues that *Attaway* requires that the officers have knowledge of the suspects' violent propensities and that, in the present matter, "the officers knew nothing of the occupants' propensities." While we agree that *Attaway* requires "knowledge of the specific individual's propensity to use violence," we also concluded that "direct evidence" "rarely will be available," thus necessitating liberal construction of this specificity requirement and allowing evidence which gives rise to an inference of an individual's propensity, as discussed above. 117 N.M. at 152, 870 P.2d at 114. The State contends that the district court could have reasonably found that a suspect who deals not only in drugs but also in weapons is likely to use those weapons to protect his or her inventory as well as prevent his or her capture with that evidence. The State notes that Defendant, during the hearing, argued that the mere presence of guns was not sufficient without a finding of propensity to resort to violence, and that this Court could thus presume that the district court found such a propensity by finding in favor of the State.

{25} We agree that the district court's ruling reasonably supports a finding of propensity based on the officers' belief that there were two to four individuals at the residence with access to multiple firearms. In the present case, the officers believed that the occupants, including an alleged drug dealer, had weapons consisting of "fully automatic Mini–14's and sawed-off shotguns." The specific, articulable facts in the present matter of multiple "fully automatic Mini–14's and sawed-off shotguns," as well as the allegation that the resident was a drug dealer, viewed in light of the surrounding circumstances, was the basis for the officers' reasonable suspicion that the occupants had a propensity for violence and justified the exigency exception to the announcement rule.

{26} In *Attaway,* this Court concluded that the knock and announce rule has at least three purposes: preventing the needless destruction of property, protecting "both the occupant and police from the possible violent response of a startled occupant suddenly confronted with an unannounced entry by an unknown person," and protecting "the sanctity of the home and individual privacy." *Attaway,* 117 N.M. at 147, 870 P.2d at 109. The State observes that, in the present matter, there was no destruction of property because the officers opened the unlocked door and entered the residence, while continuing to announce their identity and purpose. Because the officers wore clearly marked vests and repeatedly announced their identity, the second purpose, protecting against a violent response from a startled occupant suddenly confronted with unannounced entry by unknown people, was also served. The State also contends that the Court of Appeals erroneously focused only on the protection of the privacy interest without consideration of the legitimate interest of police safety, the factor upon which the district court based its ruling. We agree that a reviewing court must consider the issue of officer safety. "The right of the officers to enter the premises matures the moment a detached and neutral judicial offi-

cer determines that there is probable cause to search the premises. From that moment, governmental interests in the expeditious and safe execution of a search warrant are legitimate and strong." *Id.* at 151, 870 P.2d at 113. As noted above, we specifically endorse the general exception to the rule of announcement based on the officer's objectively reasonable belief that full or partial compliance with the rule would increase the risk of danger to the officers executing the warrant. *Id.* at 151, 870 P.2d at 113. Regarding the balance between the degree of intrusion and the risk to officer safety, the State argues that the privacy intrusion was not relatively high because the warrant was executed in the middle of the day, when most people are awake, and that it would be difficult to choose a time which is less invasive. We agree. *Cf. id.* at 143, 870 P.2d at 105 (upholding forcible entry by officers executing the warrants at 6:00 a.m. on a Saturday morning). The State contends that the threat to officer safety was very significant. Based on the presence of multiple firearms and the allegation of drug dealing where the officers are executing a warrant on a residence, we agree. *See generally Maryland v. Buie,* 494 U.S. 325, 333, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) ("The risk of danger in the context of an arrest in the home is as great as, if not greater than, it is in an on-the-street or roadside investigatory encounter.... [A]n in-home arrest puts the officer at the disadvantage of being on his [or her] adversary's 'turf.' An ambush in a confined setting of unknown configuration is more to be feared than it is in open, more familiar surroundings."). "[T]he essential and difficult question raised by this balancing is how much risk police officers can reasonably be expected to assume before disregarding the rules society has adopted to otherwise circumscribe the exercise of their considerable discretionary authority in carrying out their vital law enforcement duties." *Attaway,* 117 N.M. at 145, 870 P.2d at 107 (quotation marks and quoted authority omitted). We agree that, under the factual circumstances of this case, the degree of intrusion, the execution of a warrant in the late afternoon, balanced against the threat to officer safety, officers executing a warrant involving an al-leged drug dealer believed to be in possession of automatic weapons and sawed-off shotguns, weighs in favor of the safety of law enforcement.

{27} "In New Mexico, the ultimate question in all cases regarding alleged search and seizure violations is whether the search and seizure was reasonable." *Attaway,* 117 N.M. at 149, 870 P.2d at 111. "An otherwise legal search pursuant to a warrant is not made unreasonable by an unannounced entry when privacy and occupant safety interests are minimal and the interests of law enforcement are strong." *Id.* at 151, 870 P.2d at 113. Under the facts of this case, "[t]he state's interests in safe execution of a warrant, when coupled with specific knowledge that the occupants of the place to be searched pose a serious risk to the officers, outweigh the occupants' interests in privacy of the home." *Id.* at 152, 870 P.2d at 114.

> Absent exigency, the police must knock and receive an actual refusal or wait out the time necessary to infer one. But in a case like this, where the officers knocked and announced their presence, and forcibly entered after a reasonable suspicion of exigency had ripened, their entry satisfied ... the Fourth Amendment, even without refusal of admittance.

*Banks,* 540 U.S. at 43, 124 S.Ct. 521. The information in the affidavit provided the officers with the information that the occupant was an alleged drug dealer and had multiple fully automatic Mini–14's and sawed-off shotguns, supporting the officers' reasonable suspicion that the occupants presented a serious risk and that compliance with the announcement rule was excused.

### III. Conclusion

{28} We disapprove of bright line rules delineating reasonableness in knock and announce cases involving the exigency exception. When addressing an exigency issue related to the knock and announce rule, an appellate court must consider the totality of the circumstances present at the time of entry, as found or impliedly found by the trial court, in relation to whether a reasonable officer would believe that compliance with the announcement rule would create or

enhance the danger to the entering officers. In the present matter, we conclude that the district court properly found that the officers reasonably suspected a risk of danger and thus correctly concluded that they were entitled to enter without fully complying with the announcement rule. The law enforcement officers' reasonable suspicion was based on information that the resident was an alleged drug dealer that possessed and sold multiple fully automatic Mini–14's and sawed-off shotguns at the residence, the time of day the warrant was executed, and their knowledge that there would be two to four individuals inside who could use the weapons against them. We again emphasize that these specific facts are not minimum factors that must be met for a finding of exigency; rather, a reviewing court must look at the totality of the circumstances of the case before it. Under our liberal construction regarding specific evidence supporting an inference of the occupants' propensity for violence, viewing this evidence in the light most favorable to the district court's ruling, and considering our concern for police safety when executing warrants, we affirm the court's decision that the officers faced a serious risk justifying an exception to the knock and announce rule. We affirm the district court and reverse the Court of Appeals on this issue. We remand this case to the Court of Appeals to address Defendant's argument concerning whether the affidavit provided sufficient information to establish the informant's credibility and reliability.

{29} **IT IS SO ORDERED.**

WE CONCUR. RICHARD C. BOSSON, Chief Justice, PAMELA B. MINZNER, Justice, PETRA JIMENEZ MAES, Justice, and EDWARD L. CHÁVEZ, Justice.