This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                    **No. A-1-CA-34056**

**JOE DAVID CHAVEZ, JR.,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Mark T. Sánchez, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Elizabeth Ashton, Assistant Attorney General
Albuquerque, NM

for Appellee

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

{1}     Defendant Joe David Chavez, Jr. was convicted in a jury trial of one count racketeering, contrary to NMSA 1978, Section 30-42-4(C) (2002), one count of

conspiracy to commit racketeering, contrary to Section 30-42-4(D)[1], one count of conspiracy to commit drug trafficking, contrary to NMSA 1978, Section 30-31-20 (2006), eight counts of money laundering, contrary to NMSA 1978, Section 30-51-4 (1998), and five counts of conspiracy to commit money laundering, contrary to Section 30-51-4 for conduct he engaged in as part of a criminal enterprise.

{2}     On appeal, Defendant challenges the verdict on five grounds: (1) whether the protective sweep of Robert Chavez's residence was constitutional; (2) whether the district court erred by allowing the State's late disclosure of an expert witness; (3) whether the district court erred by denying defense counsel's motion to withdraw; (4) whether Defendant received ineffective assistance of counsel; and (5) whether there was sufficient evidence of an enterprise to convict Defendant of racketeering. We affirm Defendant's convictions.

**BACKGROUND**

{3}     At the time of Defendant's 2012 arrest, law enforcement had been investigating the AZ Boys and members of the AZ Boys since 2007 when they first identified the AZ Boys. The principal criminal enterprise of the AZ Boys was the distribution of methamphetamine. Defendant's brother, Robert Chavez, was the leader of the organization. Defendant acted as Robert's intermediary and instructed

---

[1] Defendant's indictment and judgment and sentence for conspiracy to commit racketeering was erroneously cited as Section 30-42-4(C) in the district court pleadings.

other members to do what Robert directed. Defendant's live-in girlfriend, Tracy Garrison, and Robert's live-in girlfriend, Angela Catt, were also involved in the organization. During the investigation, law enforcement noticed many cars outside the AZ Boys' Alamogordo and Phoenix residences, that all the cars were from Richardson Motor Company, and that the cars did not have liens on them. The evidence admitted at trial was corroborated by law enforcement's observations.

{4} Law enforcement's investigation developed further in 2012 after they recruited a confidential informant (CI) within the organization. The CI acted as a driver for the organization to traffic methamphetamine from Phoenix, Arizona, to Alamogordo, New Mexico. The CI took these trips with Angela and Robert. When Robert decided the CI needed a new truck, Defendant took her to the dealership, Richardson Motor Company. While there, Defendant met with a dealership representative. The CI signed paperwork, did not pay any money towards the purchase, but left with a truck in her name. Defendant constantly and consistently reminded the CI to do what Robert told her to do.

{5} Law enforcement went to Phoenix for approximately five days to observe one of Robert, Angela, and the CI's trips. Law enforcement monitored the organization and ensured the CI's safety. The CI notified law enforcement that the CI, Robert, and Angela were preparing to go back to Alamogordo, and they had hidden the methamphetamine in the spare tire. Law enforcement followed them

3

back to Alamogordo with the CI in her truck and Robert and Angela driving another car. Upon returning to Alamogordo, the CI and Robert exchanged vehicles and Robert headed to his residence. Law enforcement followed Robert home. Multiple other vehicles were parked outside the residence and law enforcement noticed the garage door opening as they approached. Law enforcement detained Robert as he was attempting to enter the residence and conducted a search of the vehicle he obtained from the CI. In the search of the vehicle, officers searched the spare tire and found approximately four pounds of methamphetamine. Law enforcement conducted a protective sweep of the residence to determine who was inside the residence. Law enforcement then obtained a search warrant for the residence and for Robert and Angela's cars.

{6}     Robert's residence was searched that morning and several financial documents related to cash purchases, such as receipts, vehicle purchase orders, and bills, were found. Law enforcement also found evidence of various vehicles purchased from Richardson Motor Company and receipts for cash payments. Law enforcement then obtained a search warrant for Richardson Motor Company for transactions related to Defendant, Robert Chavez, Tracy Garrison, and Angela Catt. Documents retrieved showed that all the vehicles purchased by the AZ Boys were paid for with cash.

4

**{7}** Based on those financial documents obtained from Robert's residence, law enforcement obtained an arrest warrant for Defendant and a search warrant for his residence. The search revealed additional financial documents, many related to cash purchases of vehicles.

**{8}** The jury returned a verdict finding Defendant guilty of one count racketeering, one count of conspiracy to commit racketeering, one count of conspiracy to commit drug trafficking, eight counts of money laundering, and five counts of conspiracy to commit money laundering on April 10, 2014. This appeal followed.

**{9}** Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of the case, we reserve further discussion of the pertinent facts for our analysis.

## DISCUSSION

### The Protective Sweep Was Constitutional

**{10}** Defendant filed a pro se motion to suppress any evidence obtained from the protective sweep of his brother's residence, which the district court denied. Defendant asserts that the protective sweep of his brother's residence was unconstitutional and any evidence resulting from it should have been suppressed. Defendant first argues that the officers lacked a reasonable belief that individuals inside the residence posed a danger to law enforcement or would destroy evidence.

5

Defendant further argues that law enforcement lacked any articulable facts indicating a threat to officer safety or to preservation of evidence. We disagree.

{11} A protective sweep is "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325, 327 (1990) (internal quotation marks and citation omitted). "The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 337; *see State v. Valdez*, 1990-NMCA-134, ¶¶ 9-11, 111 N.M. 438, 806 P.2d 578 (discussing protective sweeps and stating that the defendant must be arrested or subdued at the time the search takes place).

{12} When reviewing a district court's ruling on a motion to suppress evidence, we must determine "whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party." *State v. Lopez*, 2005-NMSC-018, ¶ 9, 138 N.M. 9, 116 P.3d 80 (internal quotation marks and citation omitted). We review the district court's factual findings for substantial evidence. *Id.* Our review of the district court's application of the law to the facts is de novo. *State v. Attaway*, 1994-NMSC-011, ¶ 6, 117 N.M. 141, 870 P.2d 103.

**{13}** Law enforcement had a reasonable belief based on specific and articulable facts that a protective sweep of Robert Chavez's residence was necessary for purposes of officer safety and preservation of evidence. Law enforcement had knowledge of the AZ Boys' dangerous nature from their investigation and from the CI. The garage door of Robert Chavez's residence was opening when law enforcement approached the residence. Law enforcement observed many vehicles outside of Robert Chavez's residence at that time. We conclude that based on the information law enforcement had, the officers had a reasonable belief that someone in the residence could pose a threat to the officers or could pose a risk of destroying evidence. *See State v. Jacobs*, 2000-NMSC-026, ¶ 38, 129 N.M. 448, 10 P.3d 127 (finding a protective sweep justified because the "officers saw another person enter the house"; officers knew that the defendant was dangerous and had weapons, and the officers "had no way of knowing who was in the house").

**{14}** Critically, the defense fails to identify what evidence law enforcement found in the protective sweep that is subject to this argument. At trial, Deputy Sheriff Preston Eldridge testified that the only evidence discovered in the protective sweep were two firearms. Accordingly, without objection from the State, the district court entered an order to suppress evidence of the firearms. Any other evidence obtained from Robert Chavez's residence was obtained through search warrants. It is unclear from the briefing and from the record below what "fruit" of the search

7

Defendant refers to and what relief Defendant seeks. "[T]his Court's policy is to refrain from reviewing unclear or undeveloped arguments [that] require us to guess at what [a party's] arguments might be[;]" thus, we decline to review this undeveloped argument any further. *State v. Urioste*, 2011-NMCA-121, ¶ 29, 267 P.3d 820 (internal quotation marks and citation omitted). We affirm the district court's denial of Defendant's motion to suppress.

**Expert Witness Disclosure**

{15}    The State's witness list filed on September 27, 2012, did not list Michael Lacenski (Lacenski) as a witness. In April 2013, the State gave Defendant a report prepared by Lacenski. A January 2014 scheduling order from the district court set a jury trial for April 7, 2014. On March 6, 2014, the State filed its supplemental witness list that included Lacenski. On April 3, 2014, the State's proposed witness list listed Lacenski as a forensic accountant for the first time but included only an address; no telephone contact information was provided. There was evidence presented at trial that the State knew it was going to put Lacenski on as early as over a year before trial. During trial, defense counsel was able to interview Lacenski on a lunch break before Lacenski's testimony.

{16}    Defendant argues that this late disclosure prejudiced Defendant by making his attorney unprepared for trial. Defendant contends that defense counsel was

unprepared in part due to the State's failure to provide information necessary for counsel to develop a defense to meet the State's case in a timely manner.

**{17}** We review the district court's decision not to exclude Lacenski for an abuse of discretion. *See State v. Harper*, 2011-NMSC-044, ¶ 16, 150 N.M. 745, 266 P.3d 25. "An abuse of discretion arises when the evidentiary ruling is clearly contrary to logic and the facts and circumstances of the case." *State v. Downey*, 2008-NMSC-061, ¶ 24, 145 N.M. 232, 195 P.3d 1244 (internal quotation marks and citation omitted). Rule 5-501(A)(5) NMRA provides that "the state shall disclose . . . a written list . . . of all witnesses which the prosecutor intends to call at the trial[.]" Rule 5-505(A) NMRA creates an ongoing duty to "promptly give written notice to the other party or the party's attorney of the existence of the additional material or witnesses."

**{18}** Nevertheless, "[c]ourts should apply the extreme sanction of exclusion of a party's evidence sparingly." *State v. Guerra*, 2012-NMSC-014, ¶ 33, 278 P.3d 1031. To justify sanctions for the late disclosure of a witness, a defendant must demonstrate that he "was prejudiced by the untimely disclosure." *State v. Imperial*, 2017-NMCA-040, ¶ 16, 392 P.3d 658 (internal quotation marks and citation omitted). "Prejudice must be more than speculative; . . . the disclosure [must be] so late that it undermines the defendant's preparation for trial." *Harper*, 2011-NMSC-044, ¶¶ 16, 20. To show prejudice, the focus is whether the disputed evidence is

9

"important and critical to the case." *State v. Martinez*, 1998-NMCA-022, ¶ 12, 124 N.M. 721, 954 P.2d 1198 (internal quotation marks and citation omitted). "[W]hen . . . the defendant has knowledge of the contents of the unproduced evidence, [a] determination of prejudice is more elusive." *Harper*, 2011-NMSC-044, ¶ 20.

{19}     Defendant relies on *State v. Schoonmaker*, 2008-NMSC-010, 143 N.M. 373, 176 P.3d 1105, *overruled on other grounds by State v. Consaul*, 2014-NMSC-030, ¶ 38, 332 P.3d 850, and argues that he was prejudiced because his private counsel was unable to withdraw and unable to hire an expert due to lack of funds. In *Schoonmaker*, the defendant "was charged with child abuse resulting in great bodily harm." 2008-NMSC-010, ¶ 1. The defendant was babysitting the child when the child was injured. *Id.* ¶ 3. The defendant maintained that the child fell off the couch, but the state purported that the defendant had shaken the child. *Id.* ¶¶ 3-4, 19-21. The defendant was deemed indigent but his family was able to pay for private counsel, although they could not afford many of the trial costs, including hiring expert witnesses. *Id.* ¶ 5. Private defense counsel eventually sought to withdraw so the public defender department could represent the defendant and assume all costs, but the court did not allow it. *Id.* ¶ 18. At trial, where the defendant was convicted, the state presented four expert witnesses on shaken baby syndrome and the defense presented none. *Id.* ¶ 20. Our Supreme Court held that

10

the defendant was deprived of effective assistance of counsel because the case hinged on whether to believe the prosecution's experts and the defendant was prejudiced by not having the ability to hire its own expert. *Id.* ¶¶ 34-36, 41. Defendant contends the same prejudice occurred in the present case.

{20}     *Schoonmaker* is distinguishable. Defendant claims that if he could have dismissed his private counsel, he would have received a public defender and hired an expert witness to counter Lacenski. However, expert testimony in *Schoonmaker* was of "critical importance" to refute the state's case, and the trial consisted almost entirely of expert testimony and no direct evidence. *Id.* ¶¶ 18, 22, 33. Here, Lacenski was not critical to the State's case because there were other witnesses to testify about the money laundering. Evidence of the financial documents had already been admitted, mostly through Deputy Dustin Flores. The CI also testified to some transactions with Defendant, including receiving the truck at Richardson Motor Company.

{21}     Whether Defendant would have been qualified for the appointment of a public defender is speculation. There is nothing in the record below that shows the district court had declared Defendant indigent. *See* NMSA 1978, § 31-16-2(C) (1973) (defining a "needy person" under the Indigent Defense Act as "a person who, at the time his need *is determined by the court*, is unable, without undue hardship, to provide for all or a part of the expenses of legal representation from

11

available present income and assets" (emphasis added)); *see also State ex rel. Quintana v. Schnedar*, 1993-NMSC-033, ¶ 12, 115 N.M. 573, 855 P.2d 562 (stating that the courts "retain the ultimate authority to determine indigence").

{22}    Defendant has not shown he was prejudiced by the late disclosure of Lacenski. As discussed above, Lacenski was not a critical witness for the State. The State relied heavily on testimony from law enforcement and the CI. Lacenski's testimony served to provide the jurors a description of money laundering and Lacenski's conclusion that Defendant laundered money. Additionally, defense counsel had Lacenski's report over a year before trial and therefore had knowledge of the contents of his testimony. Lacenski did not present any new theories that were unknown to Defendant. He merely testified to the details of money laundering and structuring, a charge Defendant knew he would be facing at trial. Any claim from Defendant that the need to defend the charge of money laundering was a surprise at trial is not credible. Accordingly, the district court did not abuse its discretion by allowing Lacenski to testify.

**Motion to Withdraw and Ineffective Assistance of Counsel**

{23}    Defense counsel became counsel of record on June 25, 2012. On February 27, 2014, defense counsel filed a motion to withdraw as counsel because he took a new job with the state. The motion was denied. Defendant filed a variety of pro se motions over a period of time, including a motion to dismiss counsel, a motion to

12

extend time for trial, and a motion to suppress. The district court denied these motions.

{24}    Defendant contends that the district court erred in denying defense counsel's motion to withdraw. Defendant argues that had defense counsel been permitted to withdraw and Defendant been able to obtain the assistance of a public defender and receive a continuance, then the public defender would have had the time and resources to develop a defense theory and engaged an expert witness.

{25}    Defendant currently claims that he received ineffective assistance of counsel in violation of the Sixth Amendment of the U.S. Constitution and Article II, Section 14 of the New Mexico Constitution. Defendant contends that defense counsel was deficient in that he:

> (1) failed to file motions contesting the search warrant that should have resulted in suppression of the evidence; (2) failed to timely prepare a defense or communicate with his client; (3) failed to make himself aware of the need for the engagement of an expert forensic accounting expert to counter the testimony of Lacenski; and (4) failed to subject the State's witnesses to meaningful adversarial testing through vigorous, prepared cross[-]examination based on their anticipated testimony.

{26}    The State responds that defense counsel filed an "eleventh hour motion to be removed from Defendant's case" nearly twenty months since defense counsel became counsel of record and thirty-nine days prior to trial. Further, the State responds that Defendant has not shown ineffective assistance of counsel because he fails to establish error of counsel or prejudice to Defendant.

13

{27} We review the decision of whether to allow counsel to withdraw for abuse of discretion. *See State v. Lucero*, 1986-NMCA-085, ¶ 21, 104 N.M. 587, 725 P.2d 266 (stating "[t]he decision of whether to appoint substitute counsel then rests within the sound discretion of the [district] court"). To establish a prima facie case of ineffective assistance, a defendant must show that: "(1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic explains counsel's conduct; and (3) counsel's apparent failings were prejudicial to the defense." *State v. Bahney*, 2012-NMCA-039, ¶ 48, 274 P.3d 134; *accord State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289 ("For a successful ineffective assistance of counsel claim, a defendant must first demonstrate error on the part of counsel, and then show that the error resulted in prejudice."). An error is not unreasonable if it "can be justified as a trial tactic or strategy." *Bernal*, 2006-NMSC-050, ¶ 32. Prejudice is shown when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). "If any claimed error can be justified as a trial tactic or strategy, then the error will not be unreasonable." *Bernal*, 2006-NMSC-050, ¶ 32.

{28} "We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action

14

might be considered sound trial strategy." *State v. Hunter*, 2006-NMSC-043, ¶ 13, 140 N.M. 406, 143 P.3d 168 (internal quotation marks and citation omitted). The "[d]efendant has the burden of showing a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Martinez*, 2007-NMCA-160, ¶ 23, 143 N.M. 96, 173 P.3d 18 (internal quotations and citation omitted).

{29} Rule 5-107(B) NMRA states that "[a]n attorney who has entered an appearance or who has been appointed by the court shall continue such representation until relieved by the court." Rule 16-116(B)(1) NMRA of the Professional Rules of Conduct states that withdrawal is permitted when it "can be accomplished without material adverse effect on the interests of the client[.]" However, "[w]hen ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation." Rule 16-116(C).

{30} The district court denied defense counsel's motion to withdraw because Defendant was facing "very serious charges" and needed an "experienced, prepared counsel for trial." We agree with the district court. Defense counsel's untimely motion for withdrawal on the eve of trial in a complex case would have adversely affected Defendant. The case was complex, and Defendant had already been incarcerated pending trial for nearly two years. Defense counsel waited until

15

thirty-nine days before trial to attempt to withdraw. Granting such withdrawal, and thereby a continuance, would have further delayed trial. Such decision is within the sound discretion of the district court, and the district court did not abuse its discretion in denying the motion to withdraw.

{31} We next examine Defendant's ineffective assistance of counsel claim. Defendant has not demonstrated error in any of his four arguments. First, it was reasonable for trial counsel to not file a motion to suppress the protective sweep. *See State v. Stenz*, 1990-NMCA-005, ¶ 7, 109 N.M. 536, 787 P.2d 455 ("[T]rial counsel is not incompetent for failing to make a motion when the record does not support the motion."). We have determined that the protective sweep was constitutional, thereby affirming the district court's constitutional determination. Second, Defendant fails to cite any specific evidence in support of his claims of lack of preparedness, lack of communication, and defective cross-examination. We are not persuaded by these broad, generic claims. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed."). Finally, Defendant contends that trial counsel "failed to make himself aware of the need for the engagement of an expert forensic accounting expert to counter the testimony of Lacenski." As previously discussed, Lacenski was not a critical witness for the State and the lack of an expert witness here does not amount to ineffective assistance of counsel. *See Schoonmaker*, 2008-

16

NMSC-010, ¶¶ 22, 41 (finding ineffective assistance of counsel where the state's case relied on expert witnesses and the defense counsel provided none).

{32} On this record, Defendant fails to show how his counsel's conduct fell below that of a reasonably competent attorney; nor does Defendant show how he was prejudiced by his trial counsel's action. Trial counsel's action can be considered the sound trial strategy or tactic of a reasonable attorney. We therefore conclude that Defendant failed to make a prima facie showing of ineffective assistance of counsel. Because we have determined that Defendant has failed to make a prima facie showing, we need not address the second prong, prejudice.

{33} Our Supreme Court has expressed a preference that ineffective assistance of counsel claims be adjudicated in habeas corpus proceedings, rather than on direct appeal. *Duncan v. Kerby*, 1993-NMSC-011, ¶ 4, 115 N.M. 344, 851 P.2d 466; *see Hunter*, 2006-NMSC-043, ¶ 30 (stating that New Mexico appellate courts frequently remand claims of ineffective assistance of counsel brought on direct appeal for further evidentiary hearings). "[H]abeas corpus proceedings are the preferred avenue for adjudicating ineffective assistance of counsel claims, because the record before the [district] court may not adequately document the sort of evidence essential to a determination of trial counsel's effectiveness." *Id.* (internal quotation marks and citation omitted). Defendant's ineffective assistance of counsel claim on this direct appeal fails to establish a prima facie showing. *See,*

17

*e.g.*, *State v. Swavola*, 1992-NMCA-089, ¶ 3, 114 N.M. 472, 840 P.2d 1238 (holding that the defendant did not establish a prima facie case of ineffective assistance of counsel on direct appeal). We therefore affirm the district court. Defendant is not precluded from bringing an ineffective assistance of counsel claim through a habeas corpus proceeding.

**Sufficiency of Evidence of Racketeering**

{34}    Defendant argues that there was insufficient evidence of an enterprise to convict Defendant of racketeering. Specifically, Defendant argues that the State did not present evidence of common purpose, organization, or continuity between Defendant and Richardson of Richardson Motor Company. Defendant focuses his argument exclusively on Richardson. At the close of the State's case, Defendant moved for a directed verdict on all the charges. The district court denied the motion.

{35}    "The question presented by a directed verdict motion is whether there was substantial evidence to support the charge." *State v. Dominguez*, 1993-NMCA-042, ¶ 36, 115 N.M. 445, 853 P.2d 147. "Whether Defendant's activities constituted an association with others has been analyzed by this Court employing both statutory interpretation analysis using a de novo review and then a sufficiency of the evidence review of the particular facts in each case." *State v. Rivera*, 2009-NMCA-132, ¶ 8, 147 N.M. 406, 223 P.3d 951; *State v. Rael*, 1999-NMCA-068, ¶ 5, 127

18

N.M. 347, 981 P.2d 280 ("[W]hether [the d]efendant's association with others constituted an enterprise under the Racketeering Act is a matter of statutory interpretation, which is a question of law, not subject to the substantial evidence standard of review.").

{36} Under the Racketeering Act, NMSA 1978, §§ 30-42-1 to -6 (1980, as amended through 2015), "racketeering" is defined as "any act that is chargeable or indictable under the laws of New Mexico and punishable by imprisonment for more than one year," involving any of several enumerated offenses, including trafficking in controlled substances. Section 30-42-3(A)(13). A " 'pattern of racketeering activity' means engaging in at least two incidents of racketeering with the intent of accomplishing any of the prohibited activities set forth in Subsections A through D of Section 30-42-4[.]" Section 30-42-3(D). "The existence of an enterprise . . . remains a separate element[,] which must be proved by the [state]." *State v. Hughes*, 1988-NMCA-108, ¶ 29, 108 N.M. 143, 767 P.2d 382 (internal quotation marks and citation omitted). An "enterprise" under the Racketeering Act is "a sole proprietorship, partnership, corporation, business, labor union, association or other legal entity or a group of individuals associated in fact although not a legal entity and includes illicit as well as licit entities[.]" Section 30-42-3(C). To prove an enterprise, the state must prove: "(1) a common purpose among the participants, (2) organization, and (3) continuity (internal quotation

19

marks and citation omitted)." *Rael*, 1999-NMCS-068, ¶ 10. "Proof of an organization is essential to establishing the elements of an enterprise, [but] the purpose of the association may be as simple as profiting from repeated illegal acts." *Hughes*, 1988-NMCA-108, ¶ 34 (citation omitted). Courts have found the following factors to be considered in determining the existence of an enterprise: "the identity of the individuals involved, their knowledge of the relevant activities, the amount of planning required to carry out the predicate acts, the frequency of the acts, the time span between each act, and the existence of an identifiable structure within the association or entity." *Id.* ¶ 33. We hold that there was sufficient evidence below to convict Defendant of racketeering, pursuant to Section 30-42-4(C).

{37} First, the common purpose of the AZ Boys was to profit from ongoing illegal activity. Robert Chavez, Tracy Garrison, Angela Catt, Matias Loza, Sammy Lee Mitchell, and Robert Richardson were also indicted. They were involved in the operation and shared the common purpose to profit from drug trafficking and money laundering. *See Hughes*, 1988-NMCA-108, ¶ 34 (stating that "the purpose of the association may be as simple as earning money from repeated illegal acts").

{38} Second, the AZ Boys were an organization because they had a "division of labor and [a] separation of functions[.]" *Rael*, 1999-NMCA-068, ¶ 14 (internal quotation marks and citation omitted). Robert was the leader and gave the orders.

20

Defendant served as Robert's intermediary at times and would ensure that Robert's orders were followed. Angela went on the Phoenix trips and brought the CI into the organization when they needed a new driver. Tracy and Angela acted as nominee purchasers who signed their names to various cash transactions. The AZ Boys demonstrated "a high degree of planning, cooperation and coordination" through the trips to Phoenix. *Id.* (internal quotation marks and citation omitted).

{39}     Third, the AZ Boys had continuity because it was "an ongoing organization whose associates act[ed] as a continuing unit" rather than on an ad hoc basis. *Id.* ¶ 15. The organization and structure prevailed for at least the five years law enforcement observed them. Law enforcement discovered at least sixteen cash vehicle purchases in the names of either Defendant, Robert, or their girlfriends spanning from the period of 2007 to 2012. The organization also continued through setbacks. Sammy Lee Mitchell, the previous driver, was arrested, and the AZ Boys brought on the CI as a replacement driver. Additionally, Robert arranged for another driver as a backup plan in case the CI could not make the last Phoenix trip.

{40}     Defendant relies on *Rael* in support of his arguments. In *Rael*, the state argued that the defendant was engaged in an enterprise by selling drugs to individuals and trading drugs for work on the defendant's house. *Id.* ¶ 9. This Court held that there was insufficient evidence of an enterprise to convict the defendant of racketeering. *Id.* ¶ 12. This Court found that exchanging drugs for

21

work on the defendant's house was merely "sporadic, temporary criminal alliances," and an association between the defendant and the buyers for personal use was not enough for an enterprise. *Id.* (alteration, internal quotation marks, and citation omitted). Unlike *Rael*, here there was a consistent pattern of drug trafficking and money laundering. Defendant and other members of the organization were jointly involved in the common purpose of profiting from illegal acts. Moreover, the organization has remained continuous for at least five years.

{41}    We therefore conclude there was sufficient evidence of an enterprise to convict Defendant of racketeering under the Racketeering Act, Section 30-42-4(C).

**CONCLUSION**

{42}    For the aforementioned reasons, we affirm Defendant's convictions.

{43}    **IT IS SO ORDERED.**


_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**


_____
**HENRY M. BOHNHOFF, Judge**


_____
**EMIL J. KIEHNE, Judge**

22